UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **CAROLYN CISSEL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **1:06-cv-1687- SEB-JMS** |
| | ) | |
| **INDIANAPOLIS POWER & LIGHT,** | ) | |
| **Defendant.** | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Carolyn Cissel, has brought this action against her former employer, Indianapolis Power & Light ("IPL"), claiming that she was the victim of discrimination and retaliation while employed with the company. This entry addresses IPL's motion for summary judgment.

### *Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all

reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir.2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." C*elotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary

judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir.2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir.2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir.1999); *Slowiak v. Land O'Lakes, Inc*., 987 F.2d 1293, 1295 (7th Cir.1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997); *Wohl v. Spectrum Mfg., Inc*., 94 F.3d 353, 354 (7th Cir.1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is nogenuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997).

*Background*

Carolyn Cissel began employment with IPL, an investor-owned utility, in November 1998.  At all times during her employment, she was a member of the IBEW, AFL-CIO Clerical, Technical and Meter Reading Unit.  From May of 2004 through her termination in August of 2007, Cissel held the position of General Clerk in IPL's Metering Department.  Team Leader Michael Shuttz was responsible for direct supervision of Plaintiff and the two other General Clerk's within the Metering Department.  The senior General Clerk was Donna Murff and second in seniority was Sandy Moser.  Cissel and Murff are African-American women and Moser is a Caucasian female.

Cissel did not get along with Murff and Moser.  She felt that they shunned her and did not want her in the department.  Cissel complained to her supervisor on several occasions that Murff and Moser would not let her get more involved in the department and would not help her with her work.  However, she never stated that she believed Murff or Moser was treating her poorly because of her race.

Cissel claims that when she got behind in her work, employees from other areas offered to assist her, but Murff and Moser did not need assistance and said that they did not want employees from other areas around their area.  They also complained to Cissel when she brought food into work, because other employees would come into the area to

-4-

share in eating it.  When Cissel  complained to her supervisor about Murff and Moser, she claims Schutz would always side with Murff and Moser.  Shuttz also refused Cissel's requests to be moved to some other area.

Sometime in December of 2005, Cissel was told that, because of changes coming to the department, the three General Clerks were going to cross-train each other so that they all could do each other's jobs.  At the time, Sandy Moser was on FMLA leave. According to Cissel, the training never occurred, in part because her coworkers refused to spend time educating her with regard to their responsibilities.  Murff specifically told Cissel that she did not care to train her because in her view Cissel had a bad attitude. Cissel considered the treatment she received from Murff, Moser and Shuttz to be harassment, but she never complained of Schuttz to anyone higher up at IPL.  She did complain to Shuttz and others regarding Murff's and Moser's attitudes towards her.  She also complained to her union representative, Donna Mueller, that Murff and Moser refused to train her, but Cissel says the union never got back to her regarding her complaint.

On January 11, 2006, Cissel met with Shuttz regarding these complaints.  They discussed the work environment, and Shuttz told Cissel that she and Murff would have to work through their differences.  He also promised that the cross-training would begin when Moser returned from FMLA leave.  Cissel was very emotional during the meeting

and cried when discussing the situation with Stutz.  She ended up taking a half day off work because she was too upset to continue working.

She returned the following day and again met with Shuttz to discuss the stress and pressure she was experiencing as a result of her work environment.   During the course of this meeting, Murff overheard Schutz and Cissell discussing Cissell's allegation that Murff was telling everyone not to help her or train her.  Murff then joined in the discussion from which Shutz eventually walked away as Murff and Cissell continued arguing about training.

On January 13, 2006, Cissel's complaints about her coworkers  and the lack of training moved higher up the IPL ladder.  A meeting was scheduled by IPL's Director of Metering, John Boosey, at which Boosey, Cissel, Murff, Shutz and Mueller, as union representative, were in attendance.  Moser was away on FMLA leave.  Boosey opened the discussion with Cissel by indicating that he understood that she believed she was working in a hostile environment[1] and questioned why she felt that way because, he said,  he saw no problems.  Cissel told him about Murff's refusal to train her and, according to Cissel, Murff admitted as much.  As the discussions proceeded, Cissel again became very upset, crying hysterically.  She eventually walked out of the meeting.

---

[1] Through all of the discussions in January of 2006, Cissell expressed only general concerns regarding her inability to get along with Murff and Moser.  While she may have described the work environment as hostile, she never claimed that the hostility she experienced was due to her race.

Still crying, she telephoned Cecilia Hawkins-Henderson, IPL's Senior Human Resources Manager, and left her name as a message when the phone was not answered. Prior to the meeting, Cissel and Hawkins-Henderson had discussed Cissel's concern's that she was not receiving training she should have been receiving and that Murff had been "picking on her." After receiving the message, Hawkins-Henderson immediately called Shuttz to inquire as to the reason Cissel was so upset as to be sobbing when she left her voice-mail message. After learning how emotional Cissel had become and that she had walked out of the Boosey meeting, Hawkins-Henderson arranged with St. Vincent Stress Center for Cissell to receive an evaluation. Hawkins-Henderson then spoke with Boosey and Cissel to advise them that she had contacted the Stress Center and made arrangements for Cissel to be seen there later that same day.

After Cissell walked out of the meeting, Boosey went in search of her to discuss whether she should continue working that day, in light of how upset she was. When he found her, she was still crying uncontrollably and had just begun a telephone conversation with her husband. Because of her sobbing and hyperventilating, Plaintiff was having difficulty explaining to her husband what was wrong. Boosey took the receiver from Cissell and told her husband that his wife was very upset about some things happening in the office and that Boosey would try to take care of the situation. Boosey then informed Cissell that she was too emotionally distraught to continue at work and that she needed to get out of the workplace so that she could settle down and get some help overcoming her

emotions.  She was told of the arrangements which had been made for her to obtain help

at the Stress Center and Plaintiff states that she said to Boosey that she just wanted to go

home and was not interested in going to the Stress Center.

Boosey, Cissel and Mueller, as Cissel's union representative, left IPL and traveled

in Boosey's car to a fast food restaurant where Boosey offered to buy lunch.  However,

Cissel had yet to regain her composure and was crying too hard to take a meal.  After

leaving the restaurant, Boosey drove to Cissel's home and told her that she should go

inside and get anything she thought she might need.  Boosey and Mueller told Cissel that

they did not want to leave her at home so upset without anyone else being there with her.

Cissell continued to cry and remained in the car.  So, Boosey drove her to the Stress

Center, where she was evaluated and encouraged to accept admittance to the center.

Later that afternoon, Plaintiff called Hawkins-Henderson and told her that she had been

through the Stress Center's evaluation process, but would not be attending the

recommended outpatient program.

Cissell never returned to work at IPL.  She applied for and received FMLA leave,

effective retroactively to January 19, 2006.  On February 3, 2006, Cissel filed a charge of

race and sex discrimination against IPL with the Equal Employment Opportunity

Commission.  Plaintiff's FMLA leave expired in April of 2006.  IPL heard nothing

further from Cissel regarding her medical condition until June 2, 2006, when it received a

letter from Dr. Gregory Spurgin, in which he advised that Cissel was suffering from stress and could not be released to work in the same location where she had been working.

After IPL received Dr. Spurgin's letter, it set up a meeting on June 8, 2006, to discuss Cissel's ability to return to work.  In attendance at the meeting were Plaintiff; David Williams, the union's Business Manager; Boosey  and several other IPL representatives, including the Director of Labor and Employee Relations, Mary King. Ms. King reviewed the General Clerk job description with Cissell and asked if there were any of those responsibilities she could not perform.  Cissell claimed to be able to perform all the functions of the job, but also claimed that she was lacking the training necessary to do the work that came through Murff's and Moser's desks so that she could adequately fill in when required.  Though Plaintiff had become preoccupied by the fact that she had not been trained to do the work that Murff and Moser performed, she had never actually been asked to perform Murff's or Moser's work.

During the June 8th meeting, Plaintiff informed IPL that she was still seeing Dr. Spurgin and that he would not release her to work if she had to continue working with "those people," whom she identified as Murff, Moser and Shuttz.  Cissell stated that her stress problems, such as lack of sleep and weight loss, were the result of her having to work with "those people."  She asked why she could not be moved to another office or in some other manner physically separated from them.  King told her that her job was closely related to Murff's and Moser's, that it made sense from a work flow standpoint

for them to be located near each other and IPL wanted the three to be able to cover for each other during absences, illnesses and vacations.  King expressed some frustration in trying to understand why Cissell would not return to work and Cissell continued to say that her doctor would not release her to return to work, if it meant she had to work with or near the same people.  The meeting ended with King telling Cissell to keep Mike Schutz informed of her progress every two weeks.

Cissel did not stay in contact with Schuttz as directed.  IPL thereupon adopted the position that Cissel was not disabled.  IPL also believed its refusal to move Cissell was consistent with its previous denial of another employee's request to be accommodated by being moved away from a supervisor with whom that employee could not get along.  Accordingly, in October 2006, King notified Cissel in writing that IPL would not transfer her to a different work location and that it was the company's understanding that she did not intend to return to work under those circumstances.  The letter encouraged Cissel to utilize IPL's job bid process, as dictated by the collective bargaining agreement, if she sought to secure  another position with the company.  Cissell never bid on any new ordifferent jobs, which she explains on the grounds that she was under the impression that the union would be sending her job bid sheets, which it did not do.

On November 21, 2006, Cissel filed this lawsuit, claiming race and sex discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.  Cissell also filed a second EEOC charge of discrimination in November of 2006,

which lead to her filing of an Amended Complaint to include the additional claims of retaliation in violation of Section 1981 and Title VII,  and discrimination in violation of the Americans With Disabilities Act.

IPL terminated Cissell's employment effective August 22, 2007, and notified her of the same in writing.  After leaving the job in January of 2006, Cissell never bid on a different job with IPL, never contacted the company or the union about available jobs, or looked at the company's internet postings to see if there were jobs on which she might bid.  Plaintiff never indicated any willingness to return to her previous job (at least if the job remained located and supervised as before).  Therfore, IPL claims it had little choice but to terminate Cissell's employment.

During the briefing which followed IPL's Motion for Summary Judgment, Cissell elected to drop her sex discrimination claim and any claim of racial discrimination other than her claims of racial harassment and retaliation.  With respect to her ADA claim, Cissell has chosen to pursue only a failure to accommodate claim.  We address these remaining claims below.

*Analysis*

**Plaintiff's Racial Harassment/Hostile Work Environment Claim**

The critical fact with respect to this claim is that Plaintiff never reported race based

harassment to anyone at IPL and there is simply no evidence of racial harassment on the part of IPL.  It is readily apparent from reading Plaintiff's deposition that, until she was represented by counsel in connection with her EEOC charge, she made no claim whatsoever to IPL regarding race as the basis for the animosity between her and her coworkers.  In fact, it is very clear that the person that Cisssell had the most difficulty with was Murff, who, like herself, was an African-American female.  Moser, Plaintiff's Caucasian coworker, was on FMLA leave during most of the time period leading up to and otherwise relevant to Plaintiff's claim.

When Plaintiff was given an opportunity in her deposition to identify the harassing behavior to which she was subject, none of the behaviors she identified were or logically could be tied to her race.  In fact, most of the behaviors she identified would not be considered harassment by a reasonable person.  Further, Cissell's contention that Murff, Moser and Shuttz engaged in those behaviors because she is African-American is mere speculation.  The behaviors she complained of, which form the basis for her hostile environment complaint, include:

- Murff said she did not want to train Cissel because Cissel had a bad attitude and told others not to help Cissel.
- Moser would not train or help Cissell.
- Murff and Moser would not include Cissel in conversations and essentially shunned her.
- Cissell heard from others that Moser put signs on Cissell's chair when Cissell was gone.  (*What the signs said we do not know because Cissell never saw them and has not explained what others may have told her was contained on the signs.*)
- Murff and Moser did not like Cissell's bringing food into work because it attracted other employees into the area to eat and talk.

-12-

- Shuttz would not require Murff and Moser to help Cissell and would not let employees from other areas assist Cissell.
- Shuttz also let Moser get away with altering time sheets.

In order to survive summary judgment on her claim that she was forced to endure a hostile work environment as a result of racial harassment, Cissell must be able show that: (1) she was subjected to unwelcome harassment, (2) the harassment was based on her race, (3) the harassment was sufficiently severe and pervasive enough to alter the conditions of her work environment so as to create a hostile and abusive environment, and (4) there is a basis for employer liability. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

The only argument Cissell makes to allow for an inference of race as a basis for any of the behaviors she complains of is her assertion that Shuttz favored Moser, a Caucasian, as evidenced by his allowing her to alter her time sheets so she could obtain "comp time." However, Cissell's belief with regard to Shuttz's allowing Moser to get away with time sheet manipulation is based upon something she heard from someone else, a woman named Rita Stridivant, who attended a meeting where the subject was supposedly broached. Cissell has presented no admissible evidence to support her speculation, which as explained here is no more than rank hearsay.

Cissell also has failed to support her assertion that the harassment she suffered was severe and pervasive. There must be sufficient evidence of record upon which a jury

-13-

could find that the harassment of which a plaintiff complains unreasonably interfered with the performance of her duties due to its creating an intimidating or offensive environment. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004).  Such a determination requires both a subjective and objective inquiry.  *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003).  While the behavior of her coworkers may not have been welcomed by Plaintiff and may even have subjectively caused her to be  emotionally unable  to carry out her job duties, there is no objective basis for finding that the actions she complains of constituted racial harassment, let alone severe and pervasive harassment. Taking into consideration the totality of the circumstances, as we are required to do, *see Farragher v. City of Boca Raton,* 524 U.S. 775, there is simply no basis on which any reasonable person could objectively conclude that the circumstances to which Cissell was subjected while at her workplace constituted severe harassment .

IPL clearly is entitled to summary judgment on Cissell's claim of racial harassment.

***Plaintiff's Failure to Accommodate Claim***

To succeed on her failure to accommodate claim under the ADA, Cissell must establish:  (1) that she is a qualified individual with a disability as defined by statute; (2) IPL was aware of that disability; and, (3) IPL failed to reasonably accommodate the disability.  *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001).  The ADA

defines a disabled individual as one who: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of an individual;  (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).

Plaintiff claims to suffer from stress and anxiety, which causes her insomnia, headaches and hair loss.  She says that this stress and anxiety occasionally cause her to be unable to work.  Because EEOC regulations identify "working" as a major life activity, *see* 29 C.F.R. § 1630(i), Cissel maintains that she is disabled.  In the alternative, she asserts that she meets the statutory definition of disabled because IPL regarded her as disabled.  She argues that the evidence indicates that IPL believed her to be disabled because it required her to go to the Stress Center.  She also claims that because, on that same date, Mr. Boosey did not want to allow her to stay at home alone, we can and should infer that IPL believed that she could not care for herself, which is another major life activity identified by EEOC regulation.  *See* 29 C.F.R. § 1630(i).

We conclude with no difficulty that Plaintiff is not disabled as a result of her stress and/or anxiety which substantially limits her ability to work.  Cissell bears the burden of establishing that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  *Squibb v. Memorial Medical Center,* 497 F.3d 775, 782 (7th Cir. 2007).  The inability to perform a single particular job is insufficient to

establish disability.  *Id.*  Plaintiff has made no effort to establish that she is restricted in her ability to perform a class or variety of jobs.  Furthermore, Cissell admitted that she could do all that was asked of her as a General Clerk, just not if it involved interacting with her then current co-workers.  Stress as a result of a plaintiff's inability to get along with coworkers or a particular supervisor does not establish a basis for a viable claim of disability under the ADA.  *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055 (7th Cir. 2000).

Cissell also lacks sufficient evidence to prove her alternative contention that IPL regarded her as having a disability.  IPL can not and does not deny that on January 13, 2006, it believed Cissell needed professional attention following her hysterical emotional outburst/reaction during the meeting  to discuss her complaints about coworkers.  Indeed, Boosey and the union representative who accompanied her when following the meeting she left IPL thought it best that Cissel not be left alone at her home while she was still in the midst of her hysterical crying spell.  However, this sort of solicitous concern over an employee's single, exaggerated emotional reaction to a situation at work does not signal that the employer regards the employee as having an ongoing, pervasive, impairing disability.

An employer must believe that its employee has an impairment that substantially limits a major life activity in order for it to "regard" the employee as being disabled.  *Kupstas v. City of Greenwood*, 398 F.3d 609, 612 (7th Cir. 2005).  Cissell has not mustered any evidence that IPL believed her ability to perform a range or class of jobs

was impaired.  Cissell's complaints, as voiced at work, were always with regard to her

inability to get along with Murff and Moser and the refusal of those coworkers to train or

appropriately interact with her.  The circumstances of which she complained and which

spawned her emotional outburst were quite specific, giving  IPL no reason to believe that

Cissell suffered from any condition which, in a broader sense, would impair her ability to

work or take care of herself.  The only possible reasonable inference created by this single

episode of emotional collapse was that IPL believed that Cissell's ability to work with her

existing coworkers and supervisor was compromised.  But Plaintiff gave IPL no

indication that she suffered from a broader impairment and no evidence exists to establish

that IPL believed one existed.  "So, if the condition that is the subject of the employer's

belief is not substantially limiting, and the employer does not believe that it is, then there

is no violation of the ADA under the 'regarded as' prong of the statute." *Mack v. Great

Dane Trailers,* 308 F.3d 776, 782 (7th Cir. 2002).

In the final analysis,  on January 13, 2006, IPL demonstrated an admirable concern

for Plaintiff in response to her extreme emotional reaction at the meeting when her work

environment was being discussed by urging her to get a professional evaluation.

Boosey's solicitousness included not wanting to let her "just go home" from work at that

point when no one else was there to provide support.  Such evidence falls dramatically

short of supporting a claim that IPL regarded Cissell as statutorily disabled.  Cissell has

not established that she is disabled as that term is defined in the ADA.  Accordingly, her claim that IPL failed to accommodate her disability cannot go forward.

### Plaintiff's Retaliation Claim

A plaintiff may establish a prima facie case of retaliation in violation of Title VII and Section 1981 by relying on either direct or indirect proof.  *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004).  Cissell claims she has demonstrated a prima facie case of retaliation via the direct proof route.  We disagree.

In order to establish a prima facie case of retaliation under the direct method, Plaintiff must present evidence that: (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse employment action.  *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004).  The Seventh Circuit has held that two types of evidence are encompassed in direct proof: direct and circumstantial.  *Volovsek v. Wisconsin Dept. of Agr., Trade and Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003).  Direct evidence generally requires a blatant statement or act on the part of the employer, which proof rarely is established.  *Id.*  "The more common type of evidence is circumstantial evidence that allows a jury to infer intentional discrimination or retaliation."  *Id*. at 690-91.  Cissell unpersuasively argues that she has presented sufficient circumstantial evidence to permit a jury to infer retaliation.

-18-

In her Amended Complaint, Cissell alleges that she engaged in statutorily protected expression "when she reported sex harassment, hostile environment and discrimination on the basis of race and sex."  She also alleges that she reasonably believed she was subjected to discrimination and harassment in violation of Title VII and Section 1981 and, after filing charges of discrimination, was subsequently the subject of a retaliatory discharge by IPL.  After IPL filed its summary judgment motion directed to the Amended Complaint, Plaintiff's allegations of retaliation took on details that varied from the claims in her pleadings.  Perhaps because her termination occurred more than nine months following the filing of her second charge of discrimination and seventeen months after her first charge (time periods lengthy enough to negate rather than support an inference of retaliatory discharge, *see Mack v. Great Dane Trailers,* 308 F.3d at 776), she was left to the sole allegation that IPL retaliated against her by requiring her to go to the Stress Center for an evaluation.

Plaintiff's change of course with regard to her retaliation claim in the midst of summary judgment briefing is cause enough for us to reject the claim.  *Hancock v. Potter,* 531 F.3d 474, 480 (7th Cir. 2008).  Moreover, Cissell's claim is merely that she was pressured to go to the Stress Center, rather than home, not that she was held captive by IPL agents or somehow denied the chance to exercise her own free will.  There plainly is no evidence that the trip to the Stress Center was a requirement for her to maintain her job.  To the contrary,  the evidence establishes beyond controversy that Boosey and

Cissell's union representative thought that such an evaluation would be in her best interests.  Plaintiff has entirely failed to advance evidence, circumstantial or direct, to support her claim that she was the victim of retaliation by IPL.

### *Conclusion*

Plaintiff and her coworkers did not get along.  The workplace friction among them upset Plaintiff, perhaps justifiably so.  However, in this litigation her search for nonexistent actionable discrimination on the part of  IPL has come to nothing.  Her efforts to impute discriminatory motives to IPL's  attempts to resolve the differences between the employees and finally its  decision to terminate her employment when she failed to return to work for more than a year after her emotional meltdown are unavailing.  IPL is entitled to summary judgment on the entirety of Plaintiff's Amended Complaint for the reasons laid out in this entry.  Accordingly, Defendant's Motion for Summary Judgment (Doc. #43) is **GRANTED** and a separate judgment will be entered in favor of IPL.

IT IS SO ORDERED

Date:  09/10/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

John H. Haskin
HASKIN LAUTER  & LARUE
jhaskin@hlllaw.com

Paul Anthony Logan
HASKIN LAUTER  & LARUE
plogan@hlllaw.com

Koryn Michelle Markham
BARNES & THORNBURG LLP
koryn.markham@btlaw.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com